Pete CRUZ, Appellant,

v.

The STATE of Texas, Appellee.

No. 50827.

Court of Criminal Appeals of Texas.

Nov. 19, 1975.

Rehearing Denied Dec. 17, 1975.

Charles W. Cromwell, Corpus Christi, on appeal only, for appellant.

William B. Mobley, Jr., Dist. Atty., J. Grant Jones, Asst. Dist. Atty., Corpus Christi, Jim D. Vollers, State's Atty., and David S. McAngus, Asst. State's Atty., Austin, for the State.

## OPINION

ODOM, Judge.

Appellant was convicted of murder with malice following a plea of guilty. The court assessed punishment at ten years.

Appellant contends first that his guilty plea was involuntary and the trial court therefore erred in overruling his motion for a new trial. The record reflects that he had negotiated a plea bargain with the prosecutor. In exchange for appellant's plea of guilty to a charge to which he had a potentially meritorious claim of self defense,[1] the State agreed to recommend a ten-year probated sentence. The trial court refused to follow the recommendation.

When appellant entered his plea of guilty, the trial court admonished him at length as to the consequences of such a plea. Following a procedure we have commended as the better practice,[2] the trial court also addressed the appellant as follows:

"THE COURT: You filed an application for probation which the Court may consider, but there is no promise or guarantee that you will be placed on probation if you are found guilty. The Court is not obligated or bound to accept the recommendations of the District Attorney or your attorney on punishment or probation. The Court may consider such recommendations, but will also consider the evidence, and after considering the evidence, the Court will make up its own mind as to whether or not you deserve probation. Do you understand that?

"THE DEFENDANT: Yes, sir.

"THE COURT: And that is regardless of any recommendations made by the District Attorney or your attorney. Do you understand?

"THE DEFENDANT: Yes, sir, I do.

"THE COURT: This Court is not part of any plea bargain, if there was one, do you understand?

"THE DEFENDANT: Yes, sir.

"THE COURT: After these explanations do you still want to plead guilty?

"THE DEFENDANT: Yes, sir."

In answer to other questions by the court, the appellant also stated that he was not pleading guilty because of any threats or promises or any consideration of fear, persuasion, or delusive hope of pardon.

In spite of these admonishments, appellant's attorney was apparently shocked by the failure of the trial court to follow the

1. The appellant and another witness testified that the deceased had previously threatened appellant's life. It was stipulated that another witness would have testified that immediately before the shooting deceased cursed appellant, threatened to kill him, and made a motion toward his pants pocket. Police photographs taken at the scene of the shooting show the handle of a pistol protruding from the pants pocket of the corpse.

The deceased was a dealer in narcotics and had been convicted of felonies. Although the appellant admitted he was a former heroin addict, he had never been convicted of a felony.

2. See *Galvan v. State,* Tex.Cr.App., 525 S.W.2d 24, 26; *Trevino v. State,* Tex.Cr. App., 519 S.W.2d 864, 868.

prosecutor's recommendation, for he testified as follows at the hearing on the motion for new trial.

"My name is Charles Cromwell. I represent Mr. Pete Cruz, and had recommended that he accept the District Attorney's recommendation mainly on the basis that I had been practicing law here in Nueces County since 1968, and I have never been aware of any time when the Court did not accept the District Attorney's recommendation, and had I known or felt like the Court would not have accepted the recommendation in this case, I would not have advised Mr. Cruz to enter his guilty plea, but would have advised him to plead not guilty and avail himself of the defenses that he has in this case. . . . I had never had one of my own cases not followed, and wasn't aware of any other attorney's recommendation not being followed, and in the same respect this is what I view as a fiction in law; you are saying one thing, but it doesn't necessarily mean what you are saying.

"THE COURT: It has never been a fiction in this Court, and never will be."

Appellant in effect urges a rule of law wherein a defendant *as a matter of right* may withdraw a plea of guilty when the trial court refuses to follow a punishment recommendation of the prosecutor that is the result of a negotiated plea agreement.

Some courts have so held relying largely upon *Santobello v. New York,* 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971).[3] It is not the holding of *Santobello,* which was

that the prosecutor is bound by any promises made to the defendant insofar as his recommendation of punishment is concerned, but the rationale and language of *Santobello* that have inspired such holdings. That rationale is that plea bargaining is an integral part of our system of justice and as such should be brought out in the open; that a procedure that encourages regularity and certainty into such negotiations is laudatory; and that deviations and aberrations within the system tend to be arbitrary and are to be discouraged.

Accordingly, in some jurisdictions there exists the right for which appellant contends. These include the Third[4] and Eighth[5] Circuits and the States of Pennsylvania[6] and Indiana.[7] The Fourth Circuit has suggested it is amenable to such a rule.[8] Language from the District of Columbia Circuit would be compatible with the rule.[9] Two years ago the Fifth Circuit stated in dictum as follows:

"Of course plea bargains are an accepted mode of resolving criminal trials, *Brady v. United States,* 1970, 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747; *North Carolina v. Alford,* 1970, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162, and defendants who plead guilty are entitled to have the sentencing court know of them and to withdraw the guilty plea if the Judge declines to accept it. *Santobello v. New York,* 1972, 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427; *Fontaine v. United States,* 1973, 411 U.S. 213, 93 S.Ct. 1461, 36 L.Ed.2d 169; *Johnson v. Beto,* 5 Cir., 1972, 466 F.2d 478."

**3.** Reliance is also frequently placed upon the American Bar Association Standards relating to Pleas of Guilty, Approved Draft, 1968, Sec. 3.3(b), and the American Bar Association Standards relating to the Function of the Trial Judge, Approved Draft, 1972, Sec. 4.1(c). See also Rule 11(e), Fed.Rules Crim. Proc., 18 U.S.C.A. , effective Dec. 1, 1975.

**4.** *United States ex rel. Culbreath v. Rundle,* 466 F.2d 730 (3rd Cir. 1972).

**5.** *United States v. Gallington,* 488 F.2d 637 (8th Cir. 1973), cert. denied, 416 U.S. 907, 94 S.Ct. 1613, 40 L.Ed.2d 112 (1974).

**6.** *Commonwealth v. Wilson,* 335 A.2d 777 (Pa.Super.Ct.1975); *Commonwealth v. Barrett,* 223 Pa.Super. 163, 299 A.2d 30 (1972); Rule 319(b), Pa.R.Crim.Proc., 19 P.S. Appendix.

**7.** *Watson v. State,* 300 N.E.2d 354 (Ind. 1973).

**8.** *United States v. Truglio,* 493 F.2d 574, 580 n. 3 (4th Cir. 1974).

**9.** *United States v. Ammidown,* 162 U.S.App. D.C. 28, 497 F.2d 615 (1973).

*United States v. Resnick,* 483 F.2d 354, 358 (5th Cir.), cert. denied, 414 U.S. 1008, 94 S.Ct. 370, 38 L.Ed.2d 246 (1973). The Fifth Circuit, however, has recently declined to apply the rule in a case where "some new complaints came to the attention of the Court" that caused the trial judge to disregard the sentencing recommendation of the prosecutor. *Bouchillon v. Estelle,* 507 F.2d 622, 623 (5th Cir. 1975). Cf. *United States v. Maggio,* 514 F.2d 80 (5th Cir. 1975).

Many state courts have declined to afford the right here contended for [10] but the decisions of these courts have been marked by lively discussions and numerous dissenting opinions.

■ This Court has frequently discussed its own views upon the issue. We have stood steadfast for the position that assessment of punishment is the province of the judge or jury, not the prosecutor or the defendant. As conceded by all, *Santobello* does not explicitly require either that the court accept the prosecutor's recommendation or that the defendant be permitted to withdraw his plea after the recommendation is rejected. *Galvan v. State,* Tex.Cr. App., 525 S.W.2d 24; *Trevino v. State,* Tex. Cr.App., 519 S.W.2d 864; *Valdez v. State,* Tex.Cr.App., 507 S.W.2d 202; *Kincaid v. State,* Tex.Cr.App., 500 S.W.2d 487; *Reyna v. State,* Tex.Cr.App., 478 S.W.2d 481. Cf. *Wilson v. State,* Tex.Cr.App., 515 S.W.2d 274. We recognize that negotiated pleas are an integral and essential part of our system of criminal justice. In cases where the guilty plea is the result of a negotiated plea agreement, the trial court in exercising its authority to assess punishment also serves as a check upon oppressive or unfair bargains or those not in the public interest. Such a function may inure to the benefit of the defendant as much as the State.

Hence, we decline to restrict the trial court's discretion in this area.

■ It is perhaps unfortunate that here the appellant chose a course of action that resulted in the denial of an opportunity to present a potentially meritorious defense. This kind of result has often been focused upon by courts in those jurisdictions who have felt that such denial constitutes arbitrariness, in view of the fact that the vast majority of sentence recommendations are accepted by trial courts. We believe that the majority of such recommendations are accepted because the trial court views them as just and in the public interest. Here, the trial court apparently believed that the appellant did not deserve probation. We are unable to say that he abused his discretion. *Trevino v. State,* Tex.Cr.App., 519 S.W.2d 864; *Cisneros v. State,* Tex.Cr.App., 501 S.W.2d 907; *Saldana v. State,* Tex.Cr.App., 493 S.W.2d 778. Appellant's first ground of error is overruled.

■ We are nevertheless convinced that justice would be better served by a procedure calculated to clear the atmosphere surrounding the plea negotiating process. Defendants now commonly deny during an Art. 26.13, V.A.C.C.P., inquiry that any promises have been made that induced a plea of guilty, when in fact the prosecutor has promised to recommend a certain sentence in exchange for the plea. The deceptive denial stems from the fear that the trial court will not accept the plea if the question is answered truthfully. The fear is misplaced because a plea bargain per se does not vitiate the voluntariness of a guilty plea. And we are persuaded that a defendant who lies upon that matter "is in no position to engage in a forthright exchange with the same judge at the same time when the question is the defendant's

---

**10.** See *People v. Selikoff,* 35 N.Y.2d 227, 360 N.Y.S.2d 623, 318 N.E.2d 784 (N.Y.Ct.App. 1974), cert. denied, 419 U.S. 1122, 95 S.Ct. 806, 42 L.Ed. 2d 822 (1975); *State v. Farris,* 320 A.2d 642 (N.H.1974); *Commonwealth v. Stanton,* 317 N.E.2d 487 (Mass.App.Ct. 1974); *Huffman v. State,* 499 S.W.2d 565 (Mo.Ct.App.1973); *State v. Ramos,* 85 N.M. 438, 512 P.2d 1274 (N.M.Ct.App.1973); *People v. Cheshier,* 3 Ill.App.3d 523, 278 N.E.2d 93 (1972). See Ill.Rev.Stats.1973, ch. 110A, Sec. 402(d)(2); *People v. West,* 3 Cal.3d 595, 91 Cal.Rptr. 385, 477 P.2d 409 (1970).

understanding and relinquishment of his constitutional rights." *People v. West,* 3 Cal.3d 595, 91 Cal.Rptr. 385, 393, 477 P.2d 409, 417 (1970).

■ The trial judges of this State already know that we commend the practice of informing defendants that the court is not bound by the sentencing recommendations of the prosecutor, as the judge did in this case.[11] In addition, we commend as better practice a procedure whereby the trial judge on the record informs the defendant and the attorneys for both the defense and the State that they have a duty to enumerate to the court and upon the record the details of any agreements that may have been reached as a result of plea negotiations.[12] The instances in which defendants are misled by their own attorney or the State's attorney should be reduced, as well as the instances in which defendants feel they have been misled or deceived. We can perceive no valid reason why in this manner the whole subject of plea bargaining should not be brought out of the shadows and into the open light of day. The only effect can be more even-handed justice, a better informed exercise of judicial discretion, and an increase in the extent to which defendants feel the criminal justice system has treated them fairly.

■ The second ground of error contends that the trial court erred in not withdrawing appellant's plea of guilty after an issue had been raised as to his sanity.

When the trial court, in accordance with Art. 26.13, V.A.C.C.P., questioned appellant as to his plea of guilty, he learned that five years prior to the hearing he had been committed to a mental hospital "for about a month." Commendably,[13] the judge immediately questioned appellant at some length as to the circumstances of that confinement and as to his present sanity and competence to stand trial. The appellant stated that he had never been mentally ill, that the psychiatrist at the hospital "said there wasn't anything wrong with me" and therefore he was discharged; that he had undergone no psychiatric care or treatment within the previous five years; that he understood what he was doing at the time of the alleged offense; and that he understood the court proceedings. His attorney indicated that he felt his client was not suffering from mental illness. The court then accepted the plea of guilty.

At the hearing on the motion for new trial, appellant reiterated all the above and further explained his earlier confinement as follows:

"The reason I was there was because I was thought to be insane, but actually what was the matter with me was that I had been operated, you know, several times, to be exact about nine or ten times. I have had surgery, you know, on my stomach, and after taking so much medication I was strung out on it, and when I withdrew from it, it looked as if I was insane. However, when I was placed in that hospital, about a month and a half later, I was reacting proper, you know, and they told me I had never been insane, and the only thing was the matter was that I had been addicted to drugs, and that is the way I got addicted to drugs, after so many surgeries."

The fact of admission to a mental hospital coupled with an explanation does not require a separate hearing to determine present sanity. Article 5547–83(b), V.A. C.S.; Art. 26.13, V.A.C.C.P.; *Bledsoe v. State,* Tex.Cr.App., 519 S.W.2d 646; *Nichols v. State,* Tex.Cr.App., 501 S.W.2d 333;

11. See also Article 26.13(a)(2), V.A.C.C.P., as amended.

12. *Accord,* American Bar Association Standards relating to Pleas of Guilty, Approved Draft, 1968, Sec. 1.5. See the American Bar Association Standards relating to the Prosecution Function, Approved Draft, 1971, Secs. 2.8(a), 4.3(b); American Bar Association Standards relating to the Defense Function, Approved Draft, 1971, Secs. 1.1(d), 5.1(b), 7.5(a).

13. See *Bledsoe v. State,* Tex.Cr.App., 519 S.W.2d 646.

*Ainsworth v. State,* Tex.Cr.App., 493 S.W.2d 517. The trial court is not required to hold the hearing unless he has a reasonable doubt as to whether a defendant has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding and as to whether he has a rational as well as factual understanding of the proceedings. *Wages v. State,* Tex.Cr. App., 501 S.W.2d 105.

The issue of insanity was not raised by sufficient evidence in the instant case. The State is not required to present any rebuttal evidence where such issue is not sufficiently raised. *Nichols v. State, supra.* No abuse of discretion has been shown. The ground of error is overruled.

The judgment is affirmed.

DOUGLAS, J., not participating.

ROBERTS, Judge (concurring).

I concur in the results since appellant at no time attempted to withdraw his plea of guilty.